IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════

LANSING DEFAYETTE,

                              Petitioner,

     - v -                                            Civ. No. 9:05-CV-722
                                                      (GLS/DEP)

SUPERINTENDENT, MID-STATE CORRECTIONAL
FACILITY,

                              Respondent.

═══════════════════════════════

APPEARANCES:                              OF COUNSEL:

FOR PETITIONER:

LANSING DEFAYETTE, *Pro Se*

FOR RESPONDENT:

HON. ANDREW M. CUOMO                       MALANCHA CHANDA, ESQ.
Attorney General for the State of New York  Assistant Attorney General
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
U.S. Magistrate Judge

REPORT AND RECOMMENDATION

     Petitioner Lansing DeFayette, a former New York State prison inmate

as a result of a 2003 conviction for reckless endangerment, has commenced

this proceeding pursuant to 28 U.S.C. § 2254 seeking federal habeas review

of his conviction.[1]  In his petition, DeFayette asserts that his conviction was the product of multiple constitutional violations, arguing that 1) he was denied his right to be present at a pre-trial meeting between his counsel and the prosecutor; 2) the trial court improperly denied his request, made directly to the court and not through his counsel, to subpoena certain witnesses to testify; 3) the court erred in not instructing the jury regarding the defense of justification; and 4) he received ineffective assistance of counsel at trial.[2]  For the reasons that follow, I recommend that the petition be denied.

I.    BACKGROUND

Petitioner's conviction stems from an incident which occurred on June

_____

[1]      Habeas corpus relief is available to a state prisoner if he is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).  Regardless of a petitioner's subsequent release, it is within the jurisdiction of a federal court to issue a writ of habeas corpus if the petitioner is "in custody" at the time his application for relief is filed. *Carafas v. LaVallee*, 391 U.S. 234, 237-38, 88 S. Ct. 1556, 1559-60 (1968)

DeFayette's petition does not appear to be rendered moot by his apparent release from custody based on these charges.  *See* http://nysdocslookup.docs.state.ny.us (indicating that DeFayette was released from prison on this charge on November 27, 2007).  DeFayette filed his habeas petition while in custody, and collateral consequences are presumed to still exist as a result of his conviction.  *Spencer v. Kemna*, 523 U.S. 1, 12, 118 S. Ct. 978, 985 (1998) ("[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'") (quoting *Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 1899 (1968)); *see also, e.g., Barker v. Reynolds*, No. 98-CV-0732, 2001 WL 1860929, at *2 (N.D.N.Y. Apr. 19, 2001) (Sharpe, M.J.) (citing *Spencer* and *Sibron*); *Binder v. Szostak*, No. 96-CV-840, 1997 WL 176353, at *3 (N.D.N.Y. Apr. 11, 1997) (Pooler, J. and DiBianco, M.J.).

[2]      After initiating this proceeding, DeFayette filed an amended petition.  Dkt. No. 8.  A comparison of it to the original petition, however, reveals that they are substantially similar, and that the amended petition does not present any new issues.

2, 2002 in a mobile home in which he and his girlfriend, Theresa Andrews, were living. Trial Transcript ("TT") at pp. 294-96.  On that date DeFayette, who had been away from the residence drinking, returned to the couple's home in an inebriated state and continued consuming alcoholic beverages with Andrews, an acknowledged alcoholic.  TT 296-97.  After an argument ensued, centering upon DeFayette's accusation that Andrews had been sexually involved with "little boys", TT 294-98, petitioner began screaming at her and struck her in the face several times.  TT 298.  After assaulting the victim, DeFayette then threw her out of the house and onto the deck, while she was naked, subsequently dragging her back into the home and choking her. TT 299.  During the encounter petitioner used two different sized pillows in an attempt to smother the victim.  AT 299-300.  Andrews ultimately passed out and urinated on herself, later regaining consciousness and going into the bathroom where she vomited.  TT 300, 306, 310.  The victim eventually went to sleep.  TT 300.

On the following morning, after the petitioner left the apartment, Andrews went to the home of her sister, "crying. . . [and] in pain", and informed her sister and her sister's boyfriend of the attack on DeFayette. TT 241-43, 249.  After hearing her recount the incident and observing that

Andrews' face was ninety percent black and blue, with marks around her neck, abrasions on her ear, and lumps on her head, the victim's sister accompanied Andrews to a local police station to report the incident, and then to a hospital for treatment of her various injuries.  AT 241-50, 301.  At the hospital, Andrews' injuries were treated by Dr. Robert Thompson, a physician who testified at trial.  TT 369-88.

During the trial the petitioner testified on his own behalf, offering a significantly different version of the events of June 2, 2002.  DeFayette testified that on that evening he and Andrews were both drinking, and engaged in a discussion concerning their relationship.  TT 457-58.  DeFayette testified that after telling Andrews that he would not marry her, the two then fell asleep on their respective couches holding hands.  TT 458.  DeFayette stated that he later awoke to someone beating him about the face and head, and that he reflexively slapped and placed the person in a choke hold, not knowing at first that it was Andrews.  TT 459-60.  During his testimony DeFayette denied ever accusing Andrews of having sex with "little boys", and stated that once he realized whom he was fighting he attempted to help her off the floor, but was instructed by her to vacate the premises.  TT 458, 460-61.  Petitioner testified that he then left the residence around 1:00

am and went to a church where he drank beer and contemplated returning to the home, ultimately deciding against it knowing that the victim would probably report the incident to law enforcement.  TT 461.  During his trial testimony DeFayette admitted injuring Andrews during the course of the altercation, but denied dragging her outside of the residence while naked, as well as any attempt to smother her with pillows.  TT 458, 462-65, 470-71, 480-93.

II.   PROCEDURAL HISTORY

    A.   State Court Proceedings

As a result of the June 2, 2002 incident petitioner was indicted by a Clinton County grand jury on July 29, 2002 and charged with two counts, including assault in second degree and reckless endangerment in the first degree, in violation of N.Y. Penal Law §§ 120.05(2) and 120.25, respectively. Am. Petition (Dkt. No. 8) Exh. D.  A jury trial was subsequently held in Clinton County Court, beginning on January 27, 2003, with County Court Judge Patrick R. McGill presiding.

Following enpanelment of the trial jury, DeFayette requested and was granted the opportunity to address the court directly.  TT 198.  During the

ensuing colloquy, DeFayette advised the court of his desire to subpoena certain witnesses and his trial counsel's refusal to honor his request.  TT 198-99.  Responding to his client's complaints, petitioner's counsel stated that the decision not to call the suggested witnesses to testify was part of his overall trial strategy.  TT 199.  After hearing the petitioner's complaints, the court explained to the petitioner during that session that the decision of whether or not to call certain witnesses was within the discretion of his counsel, and stated that the court would not independently issue subpoeneas on his behalf without counsel's approval.[3]  TT 200-02.

Following the close of the presentation of evidence, the trial court conducted a jury charge conference.  TT 499-506.  During that conference the court discussed the standard charges to be administered to the jury, specifically indicating the court's intention to instruct the jury on the issue of intoxication, but making no mention of the defense of justification.  TT 503-04.  After the charge was administered, defense counsel neither objected to the court's jury instructions nor requested additional charges.  TT 504.

Petitioner was ultimately found guilty of reckless endangerment in the

---

[3]        During the conference the prosecutor interjected, volunteering that a meeting had taken place with defense counsel one week prior to trial, during which evidentiary issues and the identity of witnesses to be called at trial were discussed.  TT 201.  The prosecutor also offered his opinion regarding the efforts of petitioner's counsel, stating his view that counsel had been diligent in working on behalf of his client.  *Id.*

first degree, but acquitted on the assault charge.  TT 604.  DeFayette was thereafter sentenced on April 7, 2003, as a second felony offender, to an indeterminate term of imprisonment of between three and one-half and seven years.  Sentencing Transcript ("ST") at 1-13.

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Third Department, on several grounds, arguing that 1) he received ineffective assistance of counsel at trial, due to his attorney's failure to call certain witnesses as requested by DeFayette; 2) the jury's verdict was internally inconsistent; 3) the prosecution improperly introduced prejudicial evidence of petitioner's prior bad acts; 4) petitioner was erroneously sentenced as a second felony offender; and 5) the sentence imposed was unduly harsh and excessive.  In a supplemental brief filed by the petitioner, *pro se*, with permission from the court, DeFayette additionally argued that 1) he was impermissibly denied the right to be present at a pretrial meeting between the District Attorney and his counsel one week prior to trial; 2) the court improperly refused to issue subpoenas, at his request, for certain witnesses to testify at trial; 3) the court improperly failed to instruct the jury regarding the defense of justification; and 4) he received ineffective assistance of counsel at trial, due to, *inter alia*, his attorney's failure to hire an

investigator, interview certain witnesses, and request a stay of sentencing.

On March 3, 2005 a five-judge panel of the Third Department issued a unanimous memorandum decision modifying petitioner's judgment of conviction, to the extent of vacating the sentence imposed and remitting the matter to the trial court for resentencing, but otherwise affirming the judgment, as modified. *People v. DeFayette,* 16 A.D.3d 708, 790 N.Y.S.2d 301 (3d Dep't 2005). In its decision, the Appellate Division specifically rejected petitioner's ineffective assistance of counsel claim on the merits, and found that the jury verdict inconsistency argument was both procedurally barred and in any event without merit. The appellate court went on to conclude that the trial court's evidentiary ruling, permitting the prosecution's introduction of evidence of prior bad acts, was not improper, and in any event, particularly in view of petitioner's failure to object to the lack of any limiting jury instructions regarding the issue, any such error was harmless.

Following resentencing, petitioner renewed his appeal of his conviction to the Third Department. On March 9, 2006 that court issued a determination unanimously affirming the conviction, and specifically finding that the resulting sentence was not unduly harsh and excessive.[4] *People v. DeFayette,* 827

---

[4] When resentenced, the court imposed the same term of incarceration as that previously ordered.

A.D.3d 840, 810 N.Y.S.2d 260 (3d Dep't 2006).  Petitioner's application for

leave to appeal to the New York State Court of Appeals was denied on June

14, 2006.  *People v. DeFayette,* 7 N.Y.3d 754, 819 N.Y.S.2d 880 (2006).

      B.   <u>Proceedings in this Court</u>

Petitioner commenced this proceeding on June 9, 2005, and

subsequently filed an amended petition on June 27, 2005.[5]  Dkt. Nos. 1, 8.

DeFayette's petition, as amended, contains four separate bases for habeas

relief, asserting as grounds 1) the denial of his right to be present at all

stages of trial; 2) the denial of his right to present a defense and call

witnesses; 3) the impropriety of the trial court's failure to charge justification;

and 4) ineffective assistance of counsel at trial, based upon his attorney's

failure to properly investigate the case and to perform adequately at trial.

Amended Petition (Dkt. No. 8).   With the filing on October 25, 2005 of a

response to the petition by the respondent, represented by the Office of the

New York State Attorney General, Dkt. Nos. 17, 18, and of a reply

memorandum, or "traverse", by the petitioner on November 22, 2005, Dkt.

No. 20, this matter is now ripe for determination and has been referred to me

---

[5]     In light of the fact that petitioner originally named the People of the State of New York and the County of Clinton as respondents in the case, on June 10, 2005, an order was issued in which, *inter alia*, I directed that the clerk substitute the superintendent of the correctional facility in which petitioner was then incarcerated as the named respondent, in the place of the State and Clinton County. *See* Dkt. No. 2

for the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also*

Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Standard of Review on the Merits

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about

significant new limitations on the power of a federal court to grant habeas

relief to a state court prisoner under 28 U.S.C. § 2254.  Under the AEDPA, "a

determination of a factual issue made by a State court shall be presumed to

be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001)

(quoting § 2254(e)(1)) (internal quotes omitted).  Significantly, a federal court

may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary
> > to, or involved an unreasonable
> > application of, clearly established Federal
> > law, as determined by the Supreme Court
> > of the United States; or

> 2) resulted in a decision that was based on
> an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, 486 F.3d 61, 65

(2007); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.), *cert. denied*, 534 U.S. 886,

122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.  When applying this test, the

Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to determine
> whether a federal court may grant habeas relief: (1)
> Was the principle of Supreme Court case law relied
> upon in the habeas petition "clearly established" when
> the state court ruled? (2) If so, was the state court's
> decision "contrary to" that established Supreme Court
> precedent? (3) If not, did the state court's decision
> constitute an "unreasonable application" of that
> principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*,

529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J.) and

*Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000) (citing *Williams*)).

Because the AEDPA's restriction on federal habeas power was

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting review

standards apply only to federal claims which have been actually adjudicated

on the merits in the state court.  *Washington v. Schriver*, 255 F.3d 45, 52-55

(2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2d Cir. 2001); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub nom.*, *Jimenez v. Graham*, 127 S. Ct. 976 (2007).  Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*" *Sellan*, 261 F.3d at 312 (emphasis added).[6,7]

---

[6]     In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply.  *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98. That court clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[7]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

If, however, a state appellate court's determination of a criminal

defendant's appeal does not mention or "contain any language, general or

specific, indicating that [the] claims [raised] were considered and denied on

the merits[,]" then the deferential standard supplied by the AEDPA is not

applicable.  *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002).   In that case,

if a state court fails to adjudicate claims raised by a defendant "on the merits",

the state court's decision is not entitled to AEDPA deference and instead, the

federal habeas court must apply the pre-AEDPA standard of *de novo* review

to the state court's disposition of the federal claim.  *Cotto v. Herbert*, 331 F.3d

217, 230 (2d Cir. 2003) (citing *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.

2001)); *see also Norde*, 294 F.3d at 411.

B.    Right to be Present at Trial

In his first ground petitioner contends that he was denied his

constitutional right to be present at a pretrial meeting involving his attorney

and the prosecutor, conducted outside the court's presence, during which

evidentiary issues and the identity of trial witnesses to be called at trial were

discussed.  Because the Third Department did not address this issue in

disposing of petitioner's direct appeal, this court must review those claims *de*

*novo*.[8]  *See Cotto*, 331 F.3d at 230.

A criminal defendant's constitutional right to be present at all stages of his trial is rooted in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985) (citing *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057 (1970)).  That right is not without limitation, however, but instead is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332 (1934), *overruled on other grounds*, *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964); *see also Kentucky v.*

---

[8]      The record is somewhat ambiguous on the question of whether petitioner has properly exhausted this particular claim by fairly presenting it to the state courts for their consideration.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)).  While not raised in his initial appellate brief, filed through counsel, the argument forming the basis for this ground was advanced in the supplemental *pro se* brief filed by the petitioner, with leave of the court. The Third Department's decision in the case, however, is silent regarding the issue. Following issuance of the appellate court's decision, leave was sought by the petitioner's counsel, in letters submitted to the New York Court of Appeals, to appeal on the basis of the "reasons argued in the enclosed brief."  The brief which was enclosed, however, was only that filed by counsel, as well as the District Attorney's responding brief; plaintiff's *pro se* brief was not included.  That omission prompted petitioner to file a separate leave application seeking review of the claims raised in his *pro se* brief but not addressed by the Appellate Division.  By order dated May 6, 2005 the Court of Appeals summarily denied petitioner's leave application.  *People v. DeFayette*, 4 N.Y.3d 885, 798 N.Y.S.2d 730 (2005).  Given these circumstances, respondent has treated the claim as properly exhausted, and I will do likewise.

*Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987) (stating that the due process clause guarantees a criminal defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure").  Where the defendant's absence during a proceeding does not undermine the fundamental fairness of the trial or his or her ability to defend against the charges, that defendant's right to attend the proceeding is not implicated under the due process clause.  *Snyder*, 291 U.S. at 105-06, 54 S. Ct. at 332; *see also Gagnon*, 470 U.S. at 526-27, 105 S. Ct. at 1484.

Consistent with these teachings, it is well-established that there is no constitutional right of a criminal defendant to be present during a court proceeding "when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106-07, 54 S. Ct. at 332.  The Second Circuit has urged that the standard requiring a defendant's presence at all stages of trial should be applied in a flexible, "common sense" manner.  *Clark v. Stinson*, 214 F.3d 315, 322-23 (2d Cir. 2000), *cert. denied*, 531 U.S. 1116, 121 S. Ct. 865 (2001).   Thus, when the proceeding is a "short interlude in a complex trial," it is not considered material under the due process clause.  *Gagnon*, 470 U.S. at 527, 105 S. Ct. at 1484.  It should be noted, moreover, that the right to be

present during critical stages of trial is circumscribed by harmless error

analysis.  *Rushen v. Spain*, 464 U.S. 114, 119 n.2, 104 S. Ct. 453, 455 n.2

(1983).

The session from which petitioner was excluded, and which forms the

basis for this portion of his petition, was not part of his trial; indeed, it was not

even a pretrial proceeding conducted by the court.  Instead, the disputed

session consisted of a meeting between adversarial trial attorneys held to

discuss various evidentiary issues and the identity of witnesses expected to

testify at trial.  Petitioner has cited no authority, nor is the court aware of any,

that would constitutionally entitle a represented criminal defendant to be a

party to every discussion between his or her counsel and the prosecution,

regardless of how insignificant it may be to the outcome of the criminal

proceeding.

Even assuming, *arguendo*, that petitioner did have a constitutional right

to participate in the disputed meeting, the failure to include him was, at best,

harmless error and thus does not provide a basis to set aside his conviction.

*See*, *e.g.*, *Bohan v. Kuhlmann*, 234 F. Supp. 2d 231, 267 (S.D.N.Y. 2002)

(rejecting petitioner's claim that his absence from the examination room

during questioning of a potential witness violated his constitutional right to be

present and concluding that petitioner failed to demonstrated that the "alleged

violation resulted in anything other than harmless error").  In this instance,

petitioner was not prejudiced by the failure to include him in the disputed

meeting since he presumably had the opportunity to discuss with his counsel

the issues that he wished to raise and the witnesses he desired to call during

the course of trial, and in fact he made some of those expectations known to

the trial court at the outset of the trial.  Accordingly, I recommend that this

ground of DeFayette's petitioner be denied.

> C.    Petitioner's Right to Call Witnesses

Ground two of DeFayette's petition challenges the trial court's denial of

his request to subpoena certain individuals to testify at his trial, despite his

attorney's strategic decision not to call them as witnesses.  Since the

Appellate Division similarly did not decide this issue, I will once again employ

a *de novo* review in connection with this ground.[9]

The Supreme Court has held that a criminal defendant has the

constitutional right to a meaningful opportunity to present a complete

defense, including the right to call witnesses. *See Wade v. Mantello*, 333 F.3d

---

[9]       The Third Department addressed this issue only in the context of petitioner's
ineffective assistance of counsel claim.  *DeFayette,* 16 A.D.3d at 708, 790 N.Y.S.2d at
302.

51, 57 (2d Cir. 2003) (citing *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) and *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S. Ct. 2704, 2708-10 (1987)); *see also Chambers v. Mississippi*, 410 U.S. 284, 294, 302, 93 S. Ct. 1038, 1045, 1049 (1973). This right, however, is not absolute; "the defendant 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability.'" *Washington*, 255 F.3d at 56 (quoting *Chambers*, 410 U.S. at 302, 93 S. Ct. at 1045 and citing, *inter alia*, *Taylor v. Illinois*, 484 U.S. 400,  410, 108 S. Ct. 646, 653 (1988) for the proposition that "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence").

In a case where the state court makes an evidentiary ruling regarding whether to exclude the testimony of certain witnesses, review by a federal court is limited to determining if such a ruling resulted in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 72-75, 112 S. Ct. 475, 482-83 (1991).  The Supreme Court has noted that only a very narrow class of evidentiary infractions violates fundamental fairness. *See Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674 (1990). Addressing the question of the appropriate test to be applied "for determining

whether a limitation on the right to present witnesses rises to the level of a constitutional violation," the Second Circuit has noted that

> [w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether "the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." In a close case, "additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." On habeas review, trial errors are subject to lenient harmless error review.

*Washington*, 255 F.3d at 56-57 (quoting *Jones v. Stinton*, 229 F.3d 112, 120 (2d Cir. 2000)) (alterations in original). As the excerpt suggests, a trial court's reasoning for the exclusion of evidence must be explored to determine whether any state evidentiary errors deprived the defendant of a fair trial. *Washington,* 255 F.3d at 57 (quoting *Jones*, 229 F.3d at 120).

In this instance, DeFayette was not denied a meaningful opportunity to present a complete defense. The witnesses requested by DeFayette to be subpoenaed included the father of the victim's son, James Sayward, Sr.; Marvin Goddeau, the boyfriend of the victim's sister; and Livingston Hatch. TT 198-202. Petitioner also requested that certain documents be subpoenead including, *inter alia*, the victim's medical records. *Id.* During a colloquy with the court concerning his request for subpoeneas to those witnesses, petitioner failed to make any proffer regarding their anticipated

testimony and how it would help further his defense to the charges.  Since James Sayward, Sr. was not present during the altercation, it is difficult to ascertain what testimony he could offer that would be of benefit to the petitioner.  By the same token, Marvin Goddeau, the boyfriend of the victim's sister, would likely have offered testimony merely cumulative to that of the sister.  No mention has been made anywhere, either during the trial or in his petition, concerning Livingston Hatch and the relationship between that individual and the relevant events.

Based upon the information available to the court, it does not appear that any of the witnesses referenced in this portion of the petition could have offered testimony which would have created a reasonable doubt regarding petitioner's guilt.  In light of this, and particularly in view of the statement of petitioner's trial counsel to the effect that he was aware of these witnesses but as part of his trial strategy had chosen not to call them, I conclude that the trial court did not err or deny DeFayette a fair trial by opting not to issue the requested subpoenas.  Accordingly, I recommend that this ground of the petition be denied as well.

D.   Failure to Instruct the Jury Regarding Justification

The third ground of DeFayette's petition complains of the trial court's

failure to instruct the trial jury regarding the defense of justification.  Since the

Third Department also failed to address this issue in its discretion when

principally rejecting petitioner's direct appeal, I will review it *de novo*.[10]

The fact that "federal habeas corpus relief does not lie for errors of state

law", *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990), does

not necessarily mean that errors under state law cannot rise to a level

sufficient to represent cognizable violations of the constitutionally guaranteed

right to due process.  *See generally Apprendi v. New Jersey*, 530 U.S. 466,

120 S.Ct. 2348 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct.

2411 (1986).  Indeed, courts presented with the issues now at bar have on

occasion granted habeas relief for a failure to charge justification where the

evidence supported a justification charge under state law and where the

erroneous failure to give such a charge was sufficiently harmful to render the

conviction unfair.  *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001) (citing

*Cupp. v. Naughten*, 414 U.S. 141, 146-47, 94 S.Ct. 396, 400 (1973)).

To demonstrate that habeas relief is warranted based upon the trial

court's failure to charge justification, DeFayette must establish both

---

[10]     In all likelihood, had the state appellate courts considered this argument, they would have deemed it to be procedurally forfeited in light of petitioner's failure to object to the court's jury instruction or specifically to request a justification charge.  *See* N.Y. Crim. Proc. Law § 470.05(2); *see also People v. Wright*, 5 A.D.3d 873, 875, 773 N.Y.S.2d 486, 490 (3d Dep't 2004), *lv. denied*, 3 N.Y.3d 651, 782 N.Y.S.2d 422 (2004).

entitlement to the justification charge in the first instance, as a matter of state

law, and that the failure to administer the justification charge resulted in a

denial of due process.  *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir.

2005); *see also Davis*, 270 F.3d at 124.  By statute, New York has

recognized justification for the use of physical force in circumstances where

> [s]uch conduct is necessary as an emergency measure
> to avoid an imminent public or private injury which is
> about to occur by reason of a situation occasioned or
> developed through no fault of the actor, and which is of
> such gravity that, according to ordinary standards of
> intelligence and morality, the desirability and urgency of
> avoiding such injury clearly outweigh the desirability of
> avoiding the injury sought to be prevented by the statute
> defining the offense in issue. . . .Whenever evidence
> relating to the defense of justification under this
> subdivision is offered by the defendant, the court shall
> rule as a matter of law whether the claimed facts and
> circumstances would, if established, constitute a
> defense.

N.Y. Penal Law § 35.05(2).  Under this statute, the justification defense

specifically allows that "[a] person may . . . use physical force upon another

person when and to the extent he or she reasonably believes such to be

necessary to defend himself, herself or a third person from what he or she

reasonably believes to be the use or imminent use of unlawful physical force

by such other person[.]"  *Id.* at § 35.15(1).

Under New York law, justification is properly regarded as a defense,

though not an affirmative defense; as such, when the defense is raised on a proper evidentiary record, the People bear the burden of disproving justification beyond a reasonable doubt.  *Jackson*, 404 F.3d at 622 (citing *Davis*, 270 F.3d at 124); *see* N.Y. Penal Law §§ 25.00(1), 35.00; *In re Y.K.*, 87 N.Y.2d 430, 433, 639 N.Y.S.2d 1001, 1002-03 (1996).  "[W]henever justification is sufficiently interposed by the defendant, the People must prove its absence to the same degree as any element of the crime charged." *People v. McManus*, 67 N.Y.2d 541, 546-47, 505 N.Y.S.2d 43, 46 (1986) (citations omitted).  Moreover, "a charge on justification is warranted whenever there is evidence to support it."  *McManus*, 67 N.Y.2d at 549, 505 N.Y.S.2d at 48.

In determining whether the evidence warrants a justification charge, the court must assess the record in a light most favorable to the defendant. *Jackson*, 404 F.3d at 622-23; *Davis*, 270 F.3d at 124-25; *see People v. Magliato*, 68 N.Y.2d 24, 29, 505 N.Y.S.2d 836, 839 (1986); *McManus*, 67 N.Y.2d at 549, 505 N.Y.S.2d at 48.  As such, if the record includes evidence which, viewed in the light most favorable to the defendant and drawing all reasonably permissible inferences in his or her favor, satisfies the essential elements of the defense of justification, the charge must be given.

Viewing the record in this case in a light most favorable to DeFayette, I conclude that a jury instruction charging the defense of justification was not warranted.  DeFayette testified that only he and Andrews were at home at the time he fell asleep on the night of the altercation.  TT 466.  The petitioner stated that he awoke to feel someone hitting him, and that his natural instinct was to hit and put a choke hold on that person.  TT 459-60, 479.  By his own account, petitioner inflicted the injuries upon Andrews without reasonably taking note of exactly who it was he was fighting.  As noted during trial, Andrews was a mere four foot three inches and weighed only ninety-six pounds as opposed to DeFayette, who was nearly two feet taller and twice Andrews' weight.  *See* TT 479.  The extent of physical force used by DeFayette was not reasonably necessary to defend himself, and the situation was not so grave that the use of such force to avoid injury was needed.  Accordingly, the trial court did not err by failing to charge the jury with a justification defense.

I note further that even if the court did err and the charge should have been provided, and assuming additionally that the claim of error was properly preserved by the petitioner, any such error did not "so infect[] the entire trial that the resulting conviction violate[d] due process."  *Cupp*, 414 U.S. at 147,

94 S. Ct. at 400.  As a practical matter, before a jury need consider a

defendant's claim of justification, it must first determine that the prosecution

has met its burden with respect to each element of the crime charged.  *Blazic*

*v. Henderson*, 900 F.2d 534, 542 (2d Cir. 1990).  For a jury to find that the

prosecution met its burden with regard to the charge of reckless

endangerment in the first degree, it would of necessity had to have rejected

significant aspects of DeFayette's testimony and believed the testimony of

Andrews, which was corroborated by both the victim's sister and the

physician who treated her injuries at the hospital emergency room.

Under New York law, a person is guilty of reckless endangerment in the

first degree "when, under circumstances evincing a depraved indifference to

human life, he recklessly engages in conduct which creates a grave risk of

death to another person."  N.Y. Penal Law § 120.25.  The trial court

instructed the jury that in order to find DeFayette guilty of reckless

endangerment in the first degree, it had to conclude that the prosecution

proved the elements of this crime beyond a reasonable doubt.  TT 574-77.

Had the jury believed DeFayette's version of the events, then out of necessity

it would have found him not guilty of the offense, with or without the

requested justification instruction.

Thus, even had the justification charge been given in this case, there is no basis to conclude that the jury would have responded differently.  On the facts of the case, I reject the contention that the omission of a justification charge was "sufficiently harmful to make the conviction unfair."  *Davis*, 270 F.3d at 123-24, and therefore recommend denial of this ground of DeFayette's petition.


      E.      <u>Ineffective Assistance of Counsel</u>

In the fourth ground of his petition, DeFayette asserts that he was denied effective representation of counsel.   Petitioner's ineffective assistance claim is broadly stated and covers areas falling into two distinct categories, implicating his attorney's 1) failure to properly investigate the case and prepare for trial, and 2) performance at trial.

Regarding his counsel's alleged failure to investigate, petitioner raises a host of contentions, including that (1) counsel failed to hire an investigator to "check on facts that would be of benifit [sic]" to him to demonstrate his innocence, including that he called the police after the encounter with Andrews and that some of the older bruises on Andrews' body resulted from an assault by another person, potentially her own son; (2) counsel failed to

interview witnesses to provide testimony that Andrews attacked petitioner first, including a doctor who examined petitioner months prior to the altercation at issue and who would have testified that Andrews assaulted petitioner on a previous occasion; and (3) counsel should have hired another doctor to testify that Andrews was intoxicated on the night of the altercation, was not sufficiently injured to be hospitalized, and no marks discerned on the victim suggested strangulation.  *See* Amended Petition (Dkt. No. 8).

As to counsel's allegedly inadequate performance at trial, petitioner claims that counsel (1) failed to object to the inconsistent verdict; (2) neglected to obtain a signed statement from Andrews, who, according to petitioner, initially told counsel "the truth" about the altercation; (3) should have requested a mistrial after Andrews accused counsel of witness tampering; (4) should have requested a stay of sentencing when the prosecutor stated that no pillow was used in the altercation; (5) failed to impeach Andrews' testimony and required her to take a "breath test" to prove she was intoxicated at trial and was an alcoholic; and (6) improperly informed the court that petitioner "had no defense."  *See* Amended Petition (Dkt. No. 8).

With the exception of petitioner's claim that counsel was ineffective in

failing to object to the verdict at trial as inconsistent, which apparently

remains unexhausted, it appears that petitioner raised the bulk of the

foregoing claims in his *pro se* brief to the Third Department  – although these

claims were not addressed by that court in its decision denying petitioner's

direct appeal.  Accordingly I will afford these allegations *de novo* review.  *See*

*Cotto*, 331 F.3d at 230.  To the extent that petitioner claims that counsel's

representation was deficient based on his failure to call witnesses to testify at

trial, the Third Department did address that portion of petitioner's argument in

its decision and as such, that court's determination in this regard is entitled to

AEDPA deference.

### 1.   Procedurally Barred Claim

Unlike the other ineffective assistance of counsel grounds now raised, it

does not appear that the argument, based upon his attorney's failure to raise

the allegedly inconsistent verdict to the trial court, has been presented to the

state courts.  Prior to seeking federal habeas relief, a petitioner must exhaust

available state remedies, or demonstrate that there is either an absence of

available state remedies or that such remedies cannot adequately protect

petitioner's rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)

(quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir.

1994), *cert. denied*, 515 U.S. 1118, 115 S. Ct. 2269 (1995).  The exhaustion

doctrine recognizes "respect for our dual judicial system and concern for

harmonious relations between the two adjudicatory institutions."  *Daye v.*

*Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*).

Though both federal and state courts are charged with securing a state

criminal defendant's federal rights, the state courts must initially be given the

opportunity to consider and correct any violations of federal law.  *Id.*   "The

chief purposes of the exhaustion doctrine would be frustrated if the federal

habeas court were to rule on a claim whose fundamental legal basis was

substantially different from that asserted in state court."  *Glover v. Bennett*,

No. 98-CV-0607, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998) (Pooler,

D.J.) (quoting *Daye*, 696 F.2d at 192) (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been

"fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52

(2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509,

512 (1971)).  A claim has been "fairly presented" if the state courts are

apprised of "both the factual and the legal premises of the claim [the

petitioner] asserts in federal court."  *Daye*, 696 F.2d at 191; *Morales v. Miller*,

41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999).  Thus, "the nature or presentation

of the claim must have been likely to alert the court to the claim's federal nature."  *Daye*, 696 F.2d at 192; *Morales*, 41 F. Supp. 2d at 374.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S. Ct. 1404 (2001). As such, the court must determine whether it would be futile for DeFayette to present the newly-asserted theory regarding ineffective assistance to the state courts.

DeFayette cannot now file an appeal with the Third Department in order to advance his claim challenging the effectiveness of his trial counsel for his alleged failure to object to the verdict as inconsistent because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91.  Moreover, since "New York does not otherwise

permit collateral attacks on a conviction when the defendant unjustifiably

failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)),

DeFayette could not now properly raise this claim, which is based upon the

record, in an Article 440 motion.  *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*,

41 F.3d 825, 829 (2d Cir. 1994), *cert. denied,* 514 U.S. 1054, 115 S.  Ct.

1436 (1995).  This claim is therefore "deemed exhausted" for purposes of

DeFayette's habeas application.  *Spence v. Superintendent, Great Meadow*

*Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-

5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).

Although the claim now of issue is "deemed exhausted," it is also

procedurally defaulted.  *See Aparicio*, 269 F.3d at 90.  Accordingly, review of

the substance of this claim by a federal court called upon to grant habeas

relief is appropriate only if the petitioner can demonstrate cause for his

default and resulting prejudice, or present evidence to show that he is

"actually innocent" of the crime of which he was convicted.  *Ramirez v.*

*Attorney General of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001)

(citations omitted); *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002)

(court is precluded from considering unexhausted claims "unless petitioner

can establish cause to excuse the default and prejudice, or actual

innocence").

To establish "cause," a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566-67 (1991); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999). Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[11]  *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645; *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992).

DeFayette has failed to establish cause for his failure to exhaust this claim and has never argued in any state court that his trial counsel rendered ineffective assistance by failing to argue for acquittal or a new trial based upon a claimed inconsistency in the jury's verdict.  Since DeFayette has not established cause for his procedural default, the court need not decide whether he suffered actual prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless *both* cause and

---

[11]     It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 752-53, 111 S. Ct. at 2566 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)).

prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985);

*You v. Bennett*, No. 00-CV-7514, 03-MISC-0066, 2003 WL 21847008, at *7

(E.D.N.Y. July 29, 2003) (citing *Coleman*, 501 U.S. at 750, 111 S. Ct. at

2564-65); *Staley v. Greiner*, No. 01 Civ. 6165, 2003 WL 470568, at *7

(S.D.N.Y. Feb. 6, 2003) (citing *Stepney*); *Pou v. Keane*, 977 F. Supp. 577,

581 (N.D.N.Y. 1997) (Kahn, J.).  Additionally, particularly in view of

DeFayette's failure to offer any evidence to show his actual innocence of the

crime of conviction, there is no basis to conclude that the court's failure to

consider the merits of this claim would result in a fundamental miscarriage of

justice, which has been interpreted as amounting to "an unjust incarceration."

*Spence*, 219 F.3d at 170.  Accordingly, I recommend that this portion of

DeFayette's ineffective assistance of counsel argument be denied on this

procedural basis.[12]

> 2.    Claims Afforded *De Novo* Review

---

[12]    Respondent has not argued that petitioner is procedurally barred from asserting this aspect of his ineffective assistance of counsel claim.  *See* Respondent's Mem. (Dkt. No. 17 at 20-25).  Although a district court can raise a petitioner's procedural default as a basis for the denial of federal habeas relief, *sua sponte*, *see, e.g., Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (citing *Yeatts v. Angelone*, 166 F.3d 255, 262 (4th Cir. 1999)), the Second Circuit has held that before a claim in a petition may properly be dismissed on procedural grounds on the court's own initiative, a district court must afford the petitioner notice of its intention to dismiss the claim on a procedural basis and an opportunity to be heard.  *Acosta*, 221 F.3d at 124.  Accordingly, if petitioner believes that this claim should not be dismissed as procedurally defaulted, he must raise this contention in timely-filed objections to this report and recommendation.

A majority of petitioner's objections to counsel's pre-trial investigation and trial performance were raised in his *pro se* brief to the Third Department, although that court did not address those issues in its decision.  Under the well-established standard governing such claims, in order to prevail on an ineffective assistance of counsel claim a petitioner must show both that 1) his or her counsel's performance was deficient, in that it failed to conform to an objective, reasonableness threshold minimum level, and 2) that deficiency caused actual prejudice to the defense, in that the petitioner was effectively deprived of a fair trial, the results of which were reliable.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005), *cert. denied,* 546 U.S. 1184, 126 S. Ct. 1363 (2006).  To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066; *Greiner*, 417 F.3d at 319 (citing *Strickland).*  An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort being made to "eliminate the distorting effects of hindsight[.]"  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Greiner,* 417 F.3d at 319 (citing *Strickland*).

When reviewing an attorney's performance against this backdrop, a court will generally indulge in a presumption that constitutionally adequate assistance has been rendered, and significant decisions have been made through the exercise of sound professional judgment to which "a heavy measure of deference" is afforded. *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066; *Greiner,* 417 F.3d at 319 (citing *Strickland).* In a case such as this, a petitioner must establish that his or her attorney omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker; it is not enough to show only that counsel omitted a nonfrivolous argument, as an attorney has no duty to advance every such argument. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S. Ct. 3308, 3314 (1983)*; Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.) (citing *Jones), cert. denied,* 513 U.S. 820, 115 S. Ct. 81 (1994).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that but for the deficiency "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068; *Henry v. Poole,* 409 F.3d 48, 63-64 (2d Cir. 2005); *Reed v. Smith,* No. 05-CV-3969, 2006 WL 929376, at *6 (E.D.N.Y. Apr. 11, 2006).

a.    Inadequate Pre-Trial Investigation

Regarding petitioner's claims that counsel failed to properly investigate his case by neglecting to hire an investigator to check on potentially exculpatory facts about Andrews' intoxication and the extent of her injuries, these allegations lack merit.  Counsel is assumed to have properly investigated the matter given that "[w]e abide by a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "'there are countless ways to provide effective assistance in any given case." *Vadas v. United States*, __ F.3d __, 2007 WL 1288335, at *5 (2d Cir. May 3, 2007) (quotations and citations omitted).  As the Supreme Court opined in *Strickland*,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066.  Based upon his

investigation of the facts, counsel interposed the plausible theory of self-defense in crafting petitioner's case and presented DeFayette himself as a witness.  Nothing in the record suggests that the course taken by counsel was anything less than sound trial strategy.  *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *see also Ward v. Kuhlman*, No. 01-CV-1054, 2007 WL 2907353, at *7 (N.D.N.Y. Oct. 4, 2007) (McCurn, S.J.) ("'A petitioner's 'bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.'") (quoting *Atkinson v. United States*, No. 05-CV-286, 2005 WL 3555946, at *7 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.)) (other quotations omitted).

Even assuming, *arguendo*, that counsel conducted an incomplete investigation, any such deficiency was not prejudicial.  Despite the other evidence which, according to the petitioner, an investigator would have discovered, including that petitioner telephoned the police after the incident and that Andrews had older bruises on her body inflicted by her son, the fact remains that the outcome of his trial would not have differed, considering petitioner's admission to having attacked Andrews, albeit allegedly in self-defense.  Petitioner's claim that counsel should have hired another doctor to

challenge the prosecution's medical expert is equally speculative and

tenuous.  Indeed, it is unlikely that the testimony of a physician who did not

even treat Andrews following the altercation would have altered the outcome

of the jury's verdict.

Accordingly, since petitioner's claim that his trial counsel did not

properly investigate his case is belied by the record and, in any event, would

not have changed the outcome of his trial, this theory fails to support his

claim of ineffective assistance.

b.     <u>Inadequate Performance at Trial</u>

As to counsel's allegedly inadequate performance at trial, petitioner

claims, *inter alia*, that counsel (1) neglected to obtain a signed statement from

Andrews, who, according to petitioner, initially told counsel "the truth" about

the altercation; (2) should have requested a mistrial after Andrews accused

him of witness tampering; (3) should have requested a stay of sentencing

when the prosecutor stated that no pillow was used in the altercation; (4)

failed to impeach Andrews' testimony and required her to take a "breath test"

to prove she was intoxicated at trial and was an alcoholic; and (5) improperly

informed the court that petitioner "had no defense."

Petitioner's claims simply are not supported by the record in this case,

which reveals that counsel's representation during trial was amply sufficient and resulted in petitioner's acquittal on the more serious charge of second degree assault.  Counsel delivered strong opening and closing statements, interposed numerous pertinent objections during the trial, and rigorously cross-examined witnesses in order to attack their credibility.  *See* TT 234-36, 268-87, 313-44, 388-413, 423-49, 507-28.  "This general demonstration of preparation and competence carries significant weight." *United States v. Aguirre*, 912 F.2d 555, 561 (2d Cir. 1990).

In any event, examined in conjunction with counsel's overall performance at trial, petitioner's allegations lack any relevance to his conviction for reckless endangerment.  Regarding petitioner's claim that Andrews should have been subject to a "breath test", such an exercise would have been superfluous since other testimony at trial established that Andrews indeed was an alcoholic and likely had been drinking on the night in question. *See*, *e.g.*, TT 316-17, 320.  Additionally, there was no need for counsel to obtain a signed statement from Andrews in advance of trial or to request a mistrial when she accused him of witness tampering given that counsel successfully elicited testimony from Andrews at trial wherein she indicated that counsel indeed had not instructed her to fabricate her testimony.  *See* TT

350-56.

As for DeFayette's claim that counsel was ineffective for failing to request a stay of sentencing because the indictment stated a pillow was used and the prosecution stated no pillow was used, this contention fails.  Initially, I note that DeFayette misrepresents the statements made by the prosecution at sentencing.  The prosecution merely stated that the jury, in returning a not guilty verdict on the assault charge, must have found no use by the petitioner of a pillow which could be regarded as a dangerous instrument.  ST 7-8.  Moreover, DeFayette was found guilty of reckless endangerment in the first degree, and the use of a dangerous instrument is not an essential element to that offense.   While use of a deadly weapon or a dangerous instrument is required for a conviction of assault in the second degree, *see* N.Y. Penal Law § 120.05(2), a conviction for reckless endangerment is warranted "when, under circumstances evincing a depraved indifference to human life, [a defendant] recklessly engages in conduct which creates a grave risk of death to another person."  N.Y. Penal Law § 120.25.  There was therefore no justifiable reason to request a stay of sentencing, and counsel's representation thus did not fall below an objective standard of reasonableness in that regard.

As to petitioner's remaining claim that counsel informed the court that petitioner had no defense, the record before the court fails to substantiate this unsupported, conclusory allegation.  I therefore recommend that petitioner's ineffective assistance claims rooted in counsel's performance at trial likewise be denied.

### 3.    Claim Afforded AEDPA Deference

To the extent that petitioner contends that counsel's ineffectiveness stems from his failure to call certain witnesses as defendant requested, this claim was examined on the merits by the Third Department and therefore is entitled to the special deference afforded by the AEDPA.  *See DeFayette*, 16 A.D.3d at 709, 790 N.Y.S.2d at 302.  In its decision, the Third Department specifically determined that counsel's decision not to call those witnesses "was a tactical one, and defendant offers nothing to show that he was prejudiced thereby."  *Id.*  I must therefore determine whether this conclusion was contrary to, or an unreasonable application of, clearly established Supreme Court precedent as articulated in *Strickland*.

Petitioner has failed to demonstrate that counsel's decision not to call certain witnesses, including a doctor who examined petitioner months prior to the altercation at issue and who would have testified that Andrews assaulted

petitioner on a previous occasion, was objectively unreasonable in contravention of *Strickland*.  Rather, trial counsel's decisions regarding whether to call or impeach witnesses and to elicit certain testimony were reasonable strategic judgments.  *See*, *e.g.*, *United States v. Best*, 219 F.3d 192, 201-02 (2d Cir. 2000) ("[C]ounsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.'") (citations omitted); *Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir. 1987) (finding that failure to elicit a witness' prior conflicting grand jury testimony on cross-examination was sound trial strategy); *United States v. Nersesian*, 824 F.2d 1294, 1320-22 (2d Cir. 1987) (holding that decisions whether to call any witnesses on behalf of defendant, whom to call as witnesses, whether to engage in cross-examination, and to what extent to cross-examine are all strategic in nature).  Beyond mere speculative allegations, petitioner has failed to show that trial counsel's decision not to call the requested witnesses either fell below an objectively reasonable standard of representation or prejudiced his defense, and a court cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (asserting that federal courts should not

grant "habeas relief on the basis of little more than speculation with slight support"); *see also Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995).  Accordingly, the Third Department's decision rejecting this claim was not an unreasonable application of *Strickland*, and this allegation of ineffective assistance of counsel also should be dismissed.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Having carefully reviewed the record in light of petitioner's arguments, now raised, several of which were presented to but never addressed by the state courts, I find them all to be lacking in merit, and that petitioner's conviction did not result from any constitutional deprivation.  Accordingly, finding no basis for this court's habeas intervention, it is hereby

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties to this action in accordance with this court's local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS</u>

REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).


Date:   November 29, 2007
        Syracuse, NY



David E. Peebles
U.S. Magistrate Judge